# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In Re: ) | |
| ) | |
| MAMTEK US, INC. ) | Case No. 11-22092 |
| ) | |
|                  Debtor. ) | |
| BRUCE E. STRAUSS, TRUSTEE, ) | |
| ) | |
|                  Plaintiff, ) | |
| ) | |
| v. ) | Adv. No. 12-2009 |
| ) | |
| BRUCE COLE, NANETTE COLE, ET. Al., ) | |
| ) | |
|                  Defendants. ) | |

## **MEMORANDUM OPINION**

Before the Court in this adversary proceeding is the Plaintiff's motion for partial summary judgment. In it he requests judgment on two counts of the nine count amended complaint which seek avoidance and recovery of transfers made to Defendants Bruce and/or Nanette Cole alleged to be either fraudulent or preferential. The Court has jurisdiction over the claims asserted pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b)(1). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F) and (H) which this Court may hear and determine and in which it may issue a final order.[1] For the reasons that follow, the Court grants the motion.

---

[1] The Court is well aware that in *Stern v. Marshall*, ___ U.S. ___, 132 S.Ct. 56 (2011), the United States Supreme Court held that a bankruptcy court may not, consistent with the limitations of Article III of the Constitution, enter a final order in certain of kinds of proceedings, even though designated as core proceedings pursuant to the statute. Most of the courts have interpreted *Stern* narrowly, based on its own language that it is a narrow decision and on the holding that Congress exceeded the limitations of Article III in "one isolated respect." *See, e.g., In re AFY, Inc.,* 461 B.R. 541, 547 (8th Cir. B.A.P. 2012). Notwithstanding the holding in *Stern*, this Court believes it has the power to enter a final judgment on the claims which are the subject of the motion for partial summary for several reasons. First, *Stern*, may not be applicable to such claims. The majority of the decisions addressing the issue has held that bankruptcy courts have the constitutional authority to finally adjudicate preference claims. *See, e.g., Official Committee of Unsecured Creditors of Appalachian Fuels, L.L.C. v. Energy Coal Res., Inc. (In re Appalachian Fuels,*

I. Background[2]

A. Procedural Background

On December 15, 2011, several creditors filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code against Debtor Mamtek US, Inc. ("Debtor" or "Mamtek"). This Court issued an Order appointing Plaintiff Bruce E. Strauss as an interim trustee on December 30, 2011. Subsequently, on January 9, 2012, the Court entered its Order for relief.

On May 3, 2012, Plaintiff filed this adversary proceeding against Defendants Bruce and Nanette Cole. The First Amended Complaint was filed on May 24, 2013. It asserts nine claims for relief against the Defendants, including requests to avoid and recover fraudulent and preferential transfers and for damages for breach of fiduciary duty and unjust enrichment and a

---

*L.L.C.)*, 472 B.R. 731, 741 (E.D. Ky. 2012); *McDonald v. Little Limestone, Inc. (In re Powers Lake Construction Company)*, 482 B.R. 803, 805 (Bankr. E.D. Wis. 2012); *KHI Liquidation Trust v. Wisenbaker Builder Services, Inc. (In re Kimball Hill, Inc.)*, 480 B.R. 894, 905 (Bankr. N.D. Ill. 2012); *Reid v. Presbitero (In re First Choice Drywall, Inc.)*, 2012 WL 4471570 at *2-3 (Bankr. N.D. Ill.); *West v. Freedom Med., Inc. (In re Apex Long Term Acute Care-Katy, L.P.)*, 465 B.R. 452, 463 (Bankr. S.D. Tex. 2011). As the court noted in *In re Cedar Funding, Inc.,* 2012 WL 3309683 (N.D. Cal. 2012), greater uncertainty exists with respect to the power to issue final orders in fraudulent conveyance proceedings, although some courts have still concluded that bankruptcy courts may issue final orders in such cases. *See, e.g., Tyler v. Banks (In re Tyler),* 493 B.R. 905 (Bankr. N.D. Ga. 2013); *In re Safety Harbor Resort & Spa*, 456 B.R. 703, 716 -17 (Bankr. M.D. Fla. 2011). Second, even if the Court lacked constitutional authority to issue a final judgment, it may do so if the parties consent. *Executive Benefit Insurance Agency v. Arkison (In re Bellingham Insurance Agency, Inc.)*, 702 F.3d 553 (9th Cir. 2012). Such consent may be express or implied. *Hasse v. Rainsdon (In re Pringle)*, ___ B.R. ___, 2013 WL 3486837 at *5 (9th Cir. B.A.P.). Failure to object after multiple opportunities to do so while participating in the proceeding, constitutes implied consent. *Pringle*, 2013 WL at *6-7; *Segarra-Miranda v. Perez-Padro*, 482 B.R. 59, 68 (Dist. P.R. 2012); *Exec. Sounding Board Assocs., Inc. v. Advanced Mach. & Eng'g, Co. (In re Oldco M. Corp.)*, 484 B.R. 598, 605-06 (Bankr. S.D.N.Y. 2012); *Falck Props., L.L.C. v. Parkvale Fin. Corp. (In re Brownsville Property Corp.)*, 469 B.R. 216, 226 (Bankr. W.D. Pa. 2012). Here, the Defendants have answered the complaint, made numerous motions in the case, including a motion for stay of the proceedings, participated in discovery and responded to the motion for partial summary judgment without once suggesting that the Court lacked the authority to enter a final order on any of the claims in the complaint, let alone the ones described in the motion for partial summary judgment. Third, and finally, even if this Court lacked the power to issue a final order and the Defendants had not effectively consented, this Court would nonetheless have the power to issue proposed Findings of Fact and Conclusions of Law. *Bellingham*, 702 F.3d at 565-66. Therefore, to the extent that this Court lacks the authority to issue a final order and the Defendants have not effectively consented, this should be considered the Court's proposed Findings of Fact (or findings that there are no genuine issues of material fact) and Conclusions of Law.

[2] For the most part, the facts cited in I.A. and I.C. provide background material and are uncontroverted. To the extent they relate to specific elements of Plaintiff's request for relief, recitation of them here reflects the Court's conclusion that there is no genuine dispute as to these facts. Nonetheless, to the extent the Defendants attempt to controvert any of them, the Court discusses those purported controversies in detail in the specific portions of the opinion which deal with those issues. It will use as a framework the Statement of Undisputed Facts Relating to Plaintiff's Motion for Summary Judgment. Hereafter, the Court will refer to that statement as "SOUF." The Court will refer to specific facts using the paragraph designations contained in that document.

2

request for a temporary restraining order. The pending motion for summary judgment relates solely to Count I of the Complaint, containing a claim against both Defendants for recovery of two allegedly fraudulent transfers in the aggregate amount of $904,167.00 and Count III which requests relief solely against Defendant Bruce Cole for recovery of an allegedly preferential transfer in the amount of $360,000.00.

After numerous extensions, Defendants finally filed a response to the motion for summary judgment. Their response contains no legal argument and cites no authorities. It is, for the most part, an ineffective attempt to controvert some of the allegedly undisputed assertions of fact contained in the motion for summary judgment. Almost without exception, however, with respect to each of the separately numbered assertions of undisputed fact contained in the brief in support of the Plaintiff's motion for summary judgment, one of the following is true: no response is made;[3] Defendants allege the fact to be controverted, but offer no explanation or supporting information for the alleged controversy; Defendants allege the fact to be controverted, but offer no evidence in support of the controversy; Defendants allege the fact to be controverted, but the evidence cited does not support the position taken by Defendants or create any such controversy; or Defendants allege the fact to be controverted, but the evidence cited in support of the controversy is not admissible and may not be considered in opposition to Plaintiff's motion for summary judgment. Each of the key facts central to Plaintiff's claims and Defendants' defenses with regard to Counts I and III will be discussed separately below. Many of the facts cited are simply not relevant to either claim.

---

[3] As Plaintiff points out in his reply memorandum in support of the motion for partial summary judgment, Defendants have not responded to any of the following paragraphs of the SOUF: 1-38, 43, 52, 53, 56, 57, 61-69, 71-73, 82-84, 93, 94, 101, 102, 105, 108, 213, 214-216, 220, 223-227, 229, 234, 235, 237 and 238. Accordingly, each of those facts is deemed admitted.

3

B.  Summary Judgment Standard

Bankruptcy Rule 7056, applying Federal Rule of Civil Procedure 56(c), provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of proof. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970).  Once the moving party has met this burden, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial, and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  When reviewing the record for summary judgment, the court is required to draw all reasonable inferences in favor of the non-movant. *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

C. Factual Background

Debtor was formed on May 17, 2010, for the purpose of constructing and operating a sucralose manufacturing facility in Moberly, Missouri.  It is an affiliate of a Hong Kong corporation, Mamtek International Ltd., formed in 2006 by Defendant Bruce Cole and several other investors.  At some point in 2010, after unsuccessful efforts to construct and operate a plant in China, Mr. Cole began approaching state and local governments in the United States seeking financing for the construction of a plant.  The city of Moberly ultimately made an offer to finance the construction of the facility through the issuance of bonds in the approximate amount of $39 million.  Pursuant to the terms of that transaction, Debtor was obligated to construct the

4

manufacturing facility and would own it after repayment of the bonds. Defendant Bruce Cole was President and Chief Operating Officer of the Debtor. The Debtor obtained a license from its affiliate Mamtek International for the technology necessary to manufacture the product for a period of 15 years. Defendant Bruce Cole had originally estimated the construction costs of the facility to be $33 million. It soon became apparent, however, that the design which formed the basis of that estimate was not usable in the United States for the construction and operation of a facility of the scale envisioned. Ultimately, it was determined that the actual cost of production would be approximately $70 million.

The transfers in question in Count I, one in the amount of $204,167 and the other in the amount of $700,000 were made on July 30, 2010, to a bank account in the name of Nanette Cole in California.[4] As a result of their marital relationship and California law, while the account was in her name, the property became community property in which both Defendants had an interest.[5] Defendant Bruce Cole has offered conflicting explanations as to the purpose of the larger transfer.[6]

The funds came from the first request made by the Debtor for a draw on the bond financing. At the time the transfers were made, Bruce Cole had been without income for a period of several

---

[4] SOUF No. 209. Although Defendants purport to controvert fact number 209, they merely cite a portion of Defendant Nanette Cole's testimony which admits transmission of the funds into her bank account.

[5] SOUF No. 211. Defendants object to 211 claiming that it constitutes a legal conclusion. Contradictorily, they also object to it as a triable issue of fact. It is, obviously, a question of law. It is uncontroverted. It is undisputed that Bruce and Nanette Cole were husband and wife at the time of the receipt of the transfer and residents of the state of California. Bruce Cole, himself a California lawyer, testified that these funds would be community property of Defendants.

[6] SOUF No. 217. Bruce Cole testified simultaneously that the transfer was compensation to Ramwell for the termination of a construction contract assigned to Debtor and then terminated and also that it was compensation to him for work performed in raising funds for Debtor. Although Defendants purport to controvert this fact, they allege generally only that the testimony is incomplete and then assert that there is more than one basis for additional compensation. The latter observation simply confirms the truth of the trustee's assertion. No record evidence is cited to contradict this fact.

months,[7] as had his wife, Nanette, and they were in default on the mortgage on their Beverly Hills home which was scheduled for a foreclosure sale in August.[8] In order to obtain funds, the Debtor was required to submit requests to the city of Moberly. Each request had to be accompanied by a form signed by a representative of the Debtor asserting that the funds were necessary for construction of the manufacturing facility along with a spreadsheet identifying the recipients and the proposed disposition of the funds and copies of the invoices supporting each item contained on the spreadsheet. The city reviewed the requests and determined whether the amounts were properly payable and forwarded the requests to United Missouri Bank, N.A., which held the bond proceeds as trustee. The bank then disbursed the funds specified on the draw requests. The first draw request contained an invoice from Ramwell Industrial, Inc. in the amount of $4,062,500 for services allegedly rendered to the Debtor. Defendant Bruce Cole was aware of the request having participated in discussions with regard to the process of its submission and receiving mail communications with regard to it. As it turns out, Ramwell never existed. It was always a to-be-formed company playing an unspecified role in the construction of the manufacturing facility. Ramwell never provided any goods or services to Mamtek and was merely a pass-through entity for submission of Mamtek overhead.

In Count III, Plaintiff seeks recovery of a transfer in the amount of $360,000 made on March 25, 2011, sent to Bridgeway Capital for the benefit of Defendant Bruce Cole. Defendant Bruce Cole contends that the payment was made for services he rendered to Mamtek in connection

---

[7] SOUF No. 221. Bruce Cole had no income from January 1, 2010, through July 30, 2010. The fact set forth in the Statement was admittedly incorrect in that it asserted lack of income through July 30, 2012. As modified, the fact is supported by the deposition testimony cited and is uncontroverted.

[8] SOUF No. 222. Defendants purport to controvert this fact asserting that it inaccurately recites Bruce Cole's testimony. They quibble by indicating that the sale was set for August rather than July. As the Plaintiff points out, however, as of the date of the transfer, the date for the foreclosure sale had been established. This fact is uncontroverted.

6

with seeking or arranging the financing for the construction and operation of the sucralose manufacturing facility.

Mamtek never finished construction of the facility and thus never operated it or produced any product. It ran out of funds and ceased business in September 2011, in possession of very few assets and leaving substantial debt.[9]

## II. Discussion of the Claims

### A. Fraudulent Transfers

Plaintiff seeks to recover the transfers made on July 30, 2010, in the amount of $904,367.00 under § 548 of the Bankruptcy Code as both actually and constructively fraudulent transfers. Under § 548 of the Bankruptcy Code, a trustee may avoid a transfer of an interest of the debtor if it was made within two years of the date of the filing of the petition and either made with actual intent to hinder, delay or defraud creditors or was made in exchange for less than reasonably equivalent value and at a time when debtor was insolvent, had unreasonably small capital, or intended to incur debts beyond its ability to pay. In this case, Plaintiff contends the transfers to Bruce and Nanette Cole are avoidable for both reasons.

### 1. Actual Intent to Defraud

The relevant intent is that of the transferor, in other words, the debtor. § 548(a)(1)(A). Since the debtor is a corporation which acts only through officers, the court may examine the intent of those involved in authorizing a transfer. Plaintiff asserts that the intent of Defendant Bruce Cole, as the Chief Executive Officer of the corporation, would be imputed to the corporation for this purpose and cites authority for that proposition. *In re Personal and Business Ins. Agency*, 334 F.3d 239 (3d Cir. 2003). Defendants cite nothing in opposition. Plaintiff contends, and the Court concludes that the evidence supports, that there is no material dispute that Defendant

---
[9] SOUF No. 38. Uncontroverted as no response was filed.

7

Bruce Cole knew the invoices submitted in support of the draw requests which funded the transfers were fraudulent.

Defendants aver in conclusory fashion that Defendant Bruce Cole was not involved in the process of making draw requests. They cite little or nothing in support of that proposition and the evidence cited by the Plaintiff clearly belies it.[10] Bruce Cole was aware of the content of the first draw request as he received numerous email messages with regard to the preparation and submission of the requests[11] and spoke personally with David Ho, an officer of the Debtor, with regard to the submission.[12] He knew the representations in it were false.[13] The money to fund the transfers which the Plaintiff seeks to avoid came from the first draw request. That draw request alleged that amounts were due to Ramwell, which assertion was supported by an invoice submitted in connection with the draw request. There are numerous problems with such an

---

[10] Defendants contend that these conclusions are based almost entirely upon negative inference from Defendant Bruce Cole's failure to answer questions at his deposition based on invocation of a Fifth Amendment privilege. Although it may not be appropriate to predicate findings based solely upon that failure, the Court may draw a negative inference as a result of his failure to answer these questions. *In re Carp,* 340 F.3d 15 (1st Cir. 2003). Moreover, as the Plaintiff points out, in each instance, the fact is amply supported by other uncontroverted evidence in the record. Defendants' observation that other persons were involved in the preparation and submission of draw requests on behalf of Mamtek does not controvert the assertion that Defendant Bruce Cole likewise participated in the process, had knowledge of the contents of the submissions and acknowledged that they were false. Finally, Defendants object generally to the use by the Plaintiff of the testimony of Bruce Cole taken in the SEC investigation. Each of those objections is, however, baseless.

[11] SOUF No. 129. On October 18, 2010, Bruce Cole received an email message from Thomas Smith with regard to addressing the role of Ramwell in the process of submission of draw requests. Defendants do not effectively controvert that fact, asserting in response only that there is no evidence of any "subsequent signature". In addition to being unsupported by any citation of the record, it is also irrelevant to the question whether Bruce Cole received this or similar email messages regarding the process of preparation and submission of Ramwell invoices.

[12] SOUF No. 128. Defendant Nanette Cole purports to controvert this fact alleging that it inaccurately recites Bruce Cole's testimony. However, a review of the portion of the deposition testimony cited reveals that her assertion is incorrect.

[13] SOUF No. 121. Specifically, Defendant Bruce Cole knew the representation that Mamtek was obligated to pay Ramwell the sum of $4,062,500 as suggested in the documentation attached to the draw request was false when made. Defendant Nanette Cole purports to controvert this allegation by, once again, alleging generally that Defendant Bruce Cole was not involved in the draw process which is irrelevant and belied by the facts. She then purports to assert that there is no statement in the exhibit cited which asserts that Mamtek was obligated to pay Ramwell. As the Plaintiff points out, however, the exhibit includes copies of invoices from Ramwell asserting such amounts were due.

assertion, not least among them that Ramwell never existed[14] and that it never performed any services on Mamtek's behalf for which it would be entitled to compensation or reimbursement.[15]

Despite the fact that the invoice makes no such assertion, Defendants contend that Ramwell was entitled to a sum of money by reason of the termination of a contract supposedly assigned to it for the right to construct the manufacturing facility.[16] Again, there are numerous difficulties with this explanation. First, the transfer was made some four months before the alleged termination of the contract.[17] Second, the contract is clearly bogus. Bruce Cole allegedly drafted the contract months before the execution of the contract between Mamtek and Septagon Construction Co., Inc. for construction of the manufacturing facility in Moberly, Missouri. However, it mimics the Septagon contract in numerous ways, including references to Missouri and United States law which would be clearly inappropriate in a contract for the construction of a manufacturing facility in China.[18] Third, the assertion that the funds were due by reason of the termination of the contract of course contradicts the assertion made in the invoice and draw requests as to the basis for the payment under the bonds. In addition, Defendant Bruce Cole admitted under oath that the use of Ramwell in the context of making draw requests was nothing

---

[14] SOUF No. 99. Defendants assert this fact is controverted but offer no evidence in support of that controversy. *See also* SOUF No. 102 indicating that Ramwell never had any employees, owned any property or had any money. Defendants do not controvert fact no. 102, but assert Ramwell had an interest in certain intellectual property, referring to a document which appears to reference Ramwell International rather than Ramwell Industrial, Inc. Moreover, how a non-existent corporation could have an interest in anything is not explained.

[15] SOUF No. 103. Defendants assert this fact is controverted, but fail to cite any evidentiary basis for the controversy.

[16] SOUF No. 214. Defendants do not controvert this assertion, but claim merely that Bruce Cole testified that there was an additional basis for compensation.

[17] SOUF No. 110. The agreement assigning the right and purporting to terminate the contract was, according to Mr. Cole, executed on November 15, 2010, but purported to be effective as of a time prior to the issuance of the bonds. Defendants purport to controvert this fact and cite to Mr. Cole's testimony, but the assertion made here is taken directly from such testimony.

[18] SOUF No. 106. Bruce Cole testified that the Ramwell contract was drafted in January 2010, although it is virtually identical to the Septagon contract prepared by Septagon in March 2010 or after. Defendants purport to controvert this fact, but cite no evidence in support of the controversy. An examination of the respective contracts, exhibits 24 and 151 to the motion for partial summary judgment, confirms the Plaintiff's conclusions and assertions of fact.

but a way to pass through Mamtek's overhead.[19] Finally, no amounts were paid to Ramwell from the draw requests after received by the Debtor.[20] No such payment was ever intended.[21] Instead, amounts were immediately paid to Defendants, which the evidence indicates was intended from the outset. In all, some $1.5 million of the initial draw request was made to officers and directors of Mamtek, none of which proposed distributions was referenced in the draw request.[22]

Actual intent is rarely indicated by direct evidence. Accordingly, the courts may infer it based on a number of circumstances traditionally referred to as badges of fraud. *In re Addison*, 540 F.3d 805 (8th Cir. 2008); *In re Graven,* 936 F.2d 378 (8th Cir. 1997). One of such badges of

---

[19] SOUF No. 104. Defendants assert the fact is controverted claiming that the cited support from Bruce Cole's deposition in the SEC proceeding is incorrect. It is not. Defendants purport to add an additional uncontroverted fact which is unsupported by the record evidence cited. Defendants quibble with Plaintiff's assertion that the bond documents did not authorize Mamtek to spend money on its overhead or anything not directly related to the construction of a manufacturing facility. Defendants purport to offer a very broad view of Mamtek's right to spend bond proceeds and assert that Mamtek's administrative expenses were approved by the City and the bond trustee. The latter assertions are universally demonstrated by the Plaintiff in his reply brief to be false. Most importantly, the Court need not resolve these disputes. Regardless of the interpretation placed upon the bond documents, nothing would authorize the transfer of bond proceeds to Nanette Cole and Bruce Cole personally, to a non-existent company for an alleged release of a cause of action for termination of a contract right or for compensation for Bruce Cole for arranging financing for the Debtor. Nonetheless, were the Court to attempt to resolve that issue, it would note first that it is an issue of law, being one of contract construction, not an issue of fact and would therefore not preclude the entry of summary judgment and, secondly, that it would embrace the Plaintiff's interpretation of the documents. As the Plaintiff points out, the Closing Statement executed by Defendant Bruce Cole represents that bond proceeds will be used in accordance with, among other things, the Tax Compliance Agreement. The Tax Compliance Agreement provided that the bond proceeds would be paid for capital expenditures and not working capital and defines capital expenditures as any costs chargeable to a capital account under general principles of federal income taxation. It then refers specifically to a treasury regulation specifically stating that current operating expenses like the ones asserted here for compensation are working capital and thus not a capital expenditure. Finally, as the Plaintiff also points out, the point is not that the transfers might have been authorized under the documents or otherwise if accurate representations had been made about the disposition of the proceeds of the draw request, but that fraud was effected upon the bond trustee by way of false representations in order to secure draws on the bonds.
[20] SOUF No. 124. Defendant Nanette Cole purports to controvert this fact asserting cryptically that "services and supplies were rendered" with no evidentiary support.
[21] SOUF No. 122. Defendant Nanette Cole purports to controvert this fact asserting cryptically that "services and supplies were rendered" with no evidentiary support.
[22] SOUF No. 125. The transfer made on July 30 included a number of officers and directors of Debtor, including David Ho, Nanette Cole, Reena Gordon and Warren and Alissa Roston. Defendant Nanette Cole purports to controvert this fact with the assertion that the funds from the bond trustee "remain bond funds." The meaning of this phrase is as unclear to the Court as it was to Plaintiff. These funds clearly came from the first draw request. They could have come from no place else given that before it, according to the exhibits cited, Mamtek had no funds in its bank account and these distributions were made immediately subsequent to the receipt of the first draw request.

10

fraud is a transfer to an insider. In this case, Defendant Bruce Cole, as Chief Executive Officer of the corporation, was clearly an insider. Defendant Nanette Cole while perhaps not encompassed by the statutory definition of insider is, of course, closely related, being the wife of Defendant Bruce Cole.

Another badge of fraud is inadequate consideration for the transfer. Here, the alleged consideration for the transfer is fees owed to Ramwell either for services provided or for release of a claim for damages for termination of a construction contract. However, as indicated above, Ramwell was not owed any amounts by Debtor, having not provided any services to Mamtek and the alleged contract was nonexistent. Since no funds were paid to Ramwell, the transfer could hardly have effectuated a release of claims even if there were claims to release.

Another badge of fraud is insolvency of the transferor. Plaintiff contends, and the evidence demonstrates without material dispute, that Mamtek was insolvent at the time of the transfers and, in fact, insolvent throughout the course of its existence. Insolvency, for purposes of the fraudulent conveyance statute is defined as a condition in which the amount of an entity's debt is greater than its assets at a fair valuation. 11 U.S.C. § 101(32). Fair valuation, however, is not utilized as the standard if the entity was not a going concern. *In re Payless Cashways,* 290 B.R. 689 (Bankr. W.D. Mo. 2003). Here, the evidence clearly demonstrates that Mamtek was never a going concern. It never finished the planned construction facility,[23] sold any product or generated any revenue.[24] It never had enough money to finish construction of the plant. Although originally estimated to cost approximately $33 million, subsequent re-evaluations reflected that the actual cost of constructing the plant as designed would be approximately $70

---

[23] SOUF No. 92. Defendants purport to controvert the fact but offer no evidence to support their position.
[24] SOUF No. 40. Defendants do not purport to controvert this statement although they allege that there was no expectation that there would be sales until the manufacturing facility was completed. As the Plaintiff notes, this additional observation is irrelevant to the motion for partial summary judgment.

11

million.[25] Mamtek never had access to anywhere near that amount of funds either pursuant to the bonds or other loans or capital resources.[26]

Mamtek's debts, including the $39 million due on the bonds, were in excess of $47 million.[27] The Schedules of Assets and Liabilities reflect debts of $11,508,614.82, which does not include the Debtor's obligation to repay the bonds.[28] As of the end of the year in 2012, general nonpriority unsecured claims had been filed against the Debtor in the amount of $45,494,166.84.[29] Against that, the Debtor has minimal assets. The facility, in addition to not having been completed, belonged to the City of Moberly, not to the Debtor. The Debtor had minimal personal property or other equipment which belonged to it. It had access to bond proceeds (after deduction of costs of issuance of the bonds) in an amount just less than $33 million. Its only other sources of capital were loans made to the Debtor by the Rosten family in the amount of $1,655,000 and contributions by certain Chinese investors which although equity, the Debtor had an obligation to repay, in the amount of $2,155,979.[30] The Debtor had a few other intangible assets of indeterminate value. It had a license to utilize the sucralose

---

[25] SOUF No. 90. Defendants purport to controvert fact number 90, but cite no evidentiary support for their assertions.

[26] SOUF No. 98. Defendants purport to controvert this fact by asserting that there were additional potential sources of funding other than the ones identified by Plaintiff, citing the Official Statement. However, the Schiller Report, Exhibit 143, clearly states that none of these additional sources of funding was realizable. In particular, although there may have been some discussion of the possibility of a $10 million investment by a Korean company, it is uncontroverted that investment never occurred and that Mamtek lacked the ability to finance construction costs approximating $70 million.

[27] SOUF No. 44. Defendants purport to controvert this fact, claiming that it is unsupported. It is, however, as Plaintiff asserts, supported by paragraph 19 of the Schiller Affidavit, Exhibit 140.

[28] SOUF No. 5.

[29] SOUF No. 4.

[30] SOUF No. 34 (only investments received by Mamtek were investments by Chinese investors of $2,155,975). SOUF No. 35 (only loans made to Mamtek were in the amount of $1,655,000.00 by Alissa Roston). SOUF No. 39 (funds received from Chinese investors were required to be paid back within three years). SOUF No. 41 (only funds Mamtek ever received were $1,655,000 from Roston family and $2,155,975 from Chinese investors and proceeds of bonds). Defendants apparently purport to controvert fact number 41 quibbling with the notion that these were the only funds received by Mamtek, citing the affidavit of Douglas Schiller, which in fact supports Plaintiff's assertion.

technology, which, however, it could not assign without consent of the licensor[31] and which had been untested in commercial production.

In support of their contention that the issue of the solvency of the Debtor is subject to a genuine dispute, Defendants cite a draft version of the document entitled, Mamtek International Limited Intellectual Property Portfolio Appraisal Services Report, prepared for the City of Moberly by Pellegrino & Associates, L.L.C. which they claim supports a valuation of Mamtek of $52,270,245. The report purports to be a valuation of certain intellectual property rights, most of which were owned by Mamtek's parent company and licensed to Mamtek. Plaintiff objects to the report for a number of reasons. First, Plaintiff objects to the Court's consideration of the report in connection with the motion for summary judgment. Second, Plaintiff argues that even if the report is considered, it should be given no weight as it is predicated upon a number of assumptions, many of which are demonstrably false.

The Court agrees with Plaintiff that it would be improper for the Court to consider the substance of the document in connection with determining whether Defendants have established the existence of a disputed issue of material fact. Rule 56(c)(2) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that a party may object to material cited in support of factual disputes if it is not presented in a form that would be admissible in evidence. First, the document is not properly authenticated. It is not self-authenticating and is not supported by an affidavit or an excerpt from deposition testimony. This is particularly important in this instance in that the document reveals on its face that it is a draft. It is not clear whether the report was ever issued and, if so, in what form and whether the valuation conclusions for which the Defendants cite the report were modified prior to its final issuance. Second, to the extent the Defendants offer the

---

[31] SOUF No. 36.

assertion in the report that certain property held by Debtor had a value in excess of $52 million in order to prove the value of Debtor's assets, it is hearsay. There is no available exception to the hearsay prohibition cited by Defendants. Third, and finally, there is a procedural reason why consideration of the report would be inappropriate. This Court issued a pretrial order establishing a deadline for the designation of expert witnesses. That deadline was October 15, 2012. No such disclosure was ever made by Defendants. Rule 37(c) of the Federal Rules of Civil Procedure, applicable in this proceeding pursuant to Rule 7037, authorizes the Court to sanction a party who attempts to introduce evidence without complying with pretrial disclosures. An appropriate sanction is exclusion of the testimony.

However, even if the Court were to consider the document, it does not establish the existence of a genuine dispute as to the material fact of asset valuation and thus solvency of the Debtor. As Plaintiff points out, the report is predicated upon a number of assumptions, among which is that Debtor had completed and was operating the sucralose manufacturing facility. That fact is indisputably false. Not only was the plant never completed, as the other indisputable evidence shows, it is extremely unlikely it could have ever been completed given its cost and the capital resources available to the Debtor.

## 2. Constructive Fraud

As noted above, the essential elements of a claim for constructive fraud are that the debtor received less than reasonable equivalent value in exchange for the transfer and that it was financially impaired in some fashion, being insolvent, left with unreasonably small capital, or unable to satisfy debts it intended to incur. As to reasonably equivalent value, the discussion above demonstrates that there was no value given. The transfer was purportedly made for the benefit of Ramwell, in satisfaction either of a claim that Ramwell held against the Debtor for

termination of a contract or for services rendered in connection with the production of the sucralose manufacturing facility. As also demonstrated above, however, neither claim was valid. Ramwell was a non-existent entity which had never provided services to the Debtor. The alleged contract was contrived and the transfer, having been made four months prior to the alleged termination, was not made in consideration of release of such a claim. Finally, the funds were not received by Ramwell, but by the Defendants.

In addition to being insolvent, the Debtor indisputably lacked adequate capital. The Debtor had an obligation to repay the bonds, in the amount of approximately $39 million and also had an obligation to construct the manufacturing facility. As noted above, while the estimated cost of construction of the facility was $33 million, the actual cost of constructing the facility according to the design set forth in the documents approximated $70 million. Debtor never had access to sources of capital anywhere near this amount. Since the Debtor did not complete the manufacturing facility, it sold no sucralose and generated no income. It had negligible assets to pledge in support of obtaining financing as the project was the property of the city of Moberly. In addition to the bond proceeds, the Debtor had only a few million dollars in additional loans and investments available to it. As noted above, short-term loans were made to the Debtor by the Rosten family in the amount of $1,655,000. Additional investments from Chinese investors were made in the amount of $2,155,975. While characterized as investments, the Debtor actually had an obligation to repay these amounts and they were in actuality debt. Defendants contend that an additional $10 million was available to the Debtor as a result of a federal loan program. However, as the Plaintiff points out, that source of funds was never realized.

3.   Good Faith and Value

The Court concludes that Plaintiff has established a prima facie case for recovery of the two identified payments as fraudulent transfers.  Defendants have asserted, pursuant to § 548(c) of the Bankruptcy Code that they received the transfers for value and in good faith.  Each of the Defendants would have to establish both requirements.  Plaintiff posits that the undisputed evidence demonstrates that they could not do so.  Defendants do not effectively controvert this assertion. With regard to Defendant Nanette Cole, there is no dispute that she provided no value to the Debtor, having never performed services for the Debtor and was owed no money by the Debtor.  These facts are undisputed.  As such, Defendant Nanette Cole could not establish a dispute with regard to the Plaintiff's assertion that she did not take for value.  As a result, the defense in § 548(c) is unavailable to her.

As to Defendant Bruce Cole, the evidence is indisputable that he did not receive any transfer made to him in good faith.  Protestations to the contrary notwithstanding, the undisputed facts demonstrate that Mr. Cole was knowledgeable of and involved in the process of making false representations to the City of Moberly in order to obtain draws on the bond proceeds which were used for his personal benefit.  Good faith is, pursuant to this defense, measured objectively.  *In re M&L Business Mach. Co., Inc.,* 84 F.3d 1330 (10th Cir. 1996).  Knowledge of facts sufficient to put the transferee on inquiry notice of the voidability of the transfer negates the defense.  *Brown v. Third Nat'l Bk. (In re Sherman),* 67 F.3d 1348 (8th Cir. 1995).  The evidence indisputably demonstrates that false statements were made to the city of Moberly to secure the bond draws which were the source of the payments the Plaintiff seeks to avoid and that Defendant Bruce Cole knew of such misrepresentations and participated in the process of making them.

16

Accordingly, there is no dispute that he did not receive the transfers in good faith and is not protected by the defense contained in § 548(c).

### B. Preferential Transfers

In Count III, Plaintiff seeks to recover from Defendant Bruce Cole as a preferential transfer, a payment made on March 25, 2011, to an account maintained by Bruce Cole with Bridgeway Capital Limited in the amount of $360,000.[32] According to § 547(b), in order to recover on a preferential transfer claim, Plaintiff would have to demonstrate each of the following: (1) a transfer of an interest of the debtor in property; (2) on account of an antecedent debt; (3) to or for the benefit of a creditor; (4) made while the debtor was insolvent; (5) made within 90 days of the filing of the petition or within one year of the petition if made to an insider; and (6) the creditor received more than he would have received had the transfer not occurred and he received a distribution on the claim in a proceeding under Chapter 7 of the Bankruptcy Code. There is no substantial dispute with respect to any of these elements.

Several of these elements are admitted either in the answer or in Bruce Cole's deposition testimony. In his deposition, he acknowledged that the transfer was made, that it was made for his benefit and that it was made as a result of a debt in the amount of $1.2 million owed him by Mamtek for a commission for securing bond funding for the company.[33] He also testified that the transfer was made to Bridgeway to hold in trust for him and that he directed the proceeds (at

---

[32] SOUF No. 230. Defendants assert this fact to be controverted claiming there is no evidence Bruce Cole had the authority to direct the payment of any invoice. However, as Plaintiff points out, Defendant Bruce Cole admitted that fact in his answer.

[33] SOUF No. 239. Defendants assert this fact is controverted claiming the commission was not to come from any particular source but it was an obligation of Mamtek based upon a percentage of funds raised from any source. As is the Plaintiff, the Court is unclear what this assertion means but agrees with Plaintiff that it does not appear to controvert fact number 239.

least in part) to a judgment creditor, which was done.[34] He admitted in his answer to the amended complaint that the transfer was made for his benefit.

As Plaintiff points out, Defendant Bruce Cole was obviously either the transferee of the transfer or a person for whose benefit the transfer was made.[35] In either event, the clear language of the statute authorizes recovery against Defendant Bruce Cole if the other elements are established.

As to solvency, the issue is discussed extensively above. The same definition of solvency applies in § 547 as in § 548. Accordingly, if, as the undisputed evidence establishes, the Debtor was insolvent throughout its existence then it was insolvent at the time this transfer was made to or for the benefit of Defendant Bruce Cole.

The transfer was not made within 90 days of the date of the filing of the petition, but it was made within one year of the date of the filing. Defendant Bruce Cole, as Chief Operating Officer of Debtor was clearly an insider as the term is defined in § 101(31)(B)(ii). As an officer, he was clearly encompassed by the statutory definition. Accordingly, a transfer made to him within the one year period prior to the filing of the petition is recoverable as preferential if the other elements are established.

The only remaining element is that Defendant Bruce Cole received more as a result of this transfer than he would have received on account of the claim had the transfer not occurred and he received a distribution on the claim in accordance with a Chapter 7 proceeding initiated by or against the Debtor. The evidence is clear that is the case and that there is no substantial dispute

---

[34] SOUF No. 233. Defendants purport to controvert fact number 233 asserting simply that the testimony is incomplete, without explaining why the cited evidence does not support the assertion or offering any citation to any controverting evidence.

[35] SOUF No. 236. Defendants purport to controvert fact number 236 with a reference to their response to fact number 234, without citation to any evidentiary material. In addition, as Plaintiff points out, Defendant Bruce Cole admitted fact number 236 when he admitted paragraph 121 of the amended complaint in his answer.

with respect to it. Defendant Bruce Cole received a $360,000 distribution on a claim alleged to be in the amount of $1,200,000, a 30% distribution. As noted above, the claims in the case exceed $45 million and the affidavit of Debtor's Chief Financial Officer indicates that on the petition date, Mamtek had debts in excess of $47 million and tangible assets of less than $2,000. Defendant Bruce Cole clearly would therefore have received a dividend substantially less than 30% if the transfer to him via Bridgeway Capital had not occurred and he had received distribution in a hypothetical Chapter 7 liquidation of Mamtek based on these claims and these assets.[36]

### III. Conclusion

For all the reasons stated above, this Court finds that there is no genuine dispute as to any material fact with respect to the Plaintiff's right to recover against Defendants Bruce Cole and Nanette Cole on the two transfers aggregating $904,167 described in Count I of the complaint. The evidence indisputably demonstrates that the transfers were made with actual intent to hinder, delay or defraud creditors of Mamtek, that Mamtek was insolvent at the time the transfers were made and received less than reasonably equivalent value in exchange for the transfers. There is no dispute that Nanette Cole gave no value for the transfers and Bruce Cole did not take them in

---

[36] In his answer, Defendant Bruce Cole alleged that the transfer was not avoidable as a preference because: it was intended to be a contemporaneous exchange for new value given to the Debtor and in fact was a substantially contemporaneous exchange (§ 547(c)(1)); that it was made in payment of a debt incurred by the Debtor in the ordinary course of business and was made in the ordinary course of business of the Debtor or according to ordinary business terms (§ 547(c)(2)); and that after the transfer was made, Defendant gave new value to or for the benefit of the Debtor (§ 547(c)(4)). No evidence was offered in his response to the motion for summary judgment in support of any of these defenses. Neither is any legal argument made in support of defenses. In fact, no mention of them is made at all. The affirmative defenses are issues on which the Defendant would bear the burden of proof. In the summary judgment context, Plaintiff need only demonstrate that no evidence was offered in support of the defenses. *Burtch v. Detroit Forming, Inc. (In re Archway Cookies, Inc.)*, 435 B.R. 234, 240 (Bankr. D. Del. 2010). As a result of his failure to brief and argue the defenses in response to the motion for summary judgment, Defendant has effectively abandoned them. *Radnor Holdings Corporation v. PPT Consulting, L.L.C. (In re Radnor Holdings Corporation),* 2009 WL 2004226 at *4 (Bankr. D. Del.) ("relying on Fed. R. Civ. P. 56(e), courts have held that if a party asserts certain affirmative defenses but fails to subsequently brief and argue all of them, only those that are briefed and argued should be considered.")

good faith and that § 548(c), therefore, does not apply to either. Accordingly, the Court will enter judgment against both Defendants for recovery of these transfers.

Similarly, the Court finds that there is no genuine issue of material fact as to any element of Plaintiff's claim for recovery of a preferential transfer in the amount of $360,000 against Defendant Bruce Cole and the Court will award judgment in favor of the Plaintiff for that amount. The evidence indisputably demonstrates the transfer was made from property which belonged to the Debtor, that it was made to Defendant Bruce Cole or for his benefit, that at the time he was a creditor, that the transfer was made on account of an antecedent debt, it was made within one year of the date of the filing of the petition at a time when he was an insider as an officer of the Debtor, that he received considerably more on his claim than he would have received had the transfer not occurred and he had received a distribution in accordance with a hypothetical liquidation of the Debtor.

A separate Order will be entered in accordance with Bankruptcy Rule 9021.

Dated:        August 29, 2013                         /s/ Dennis R. Dow
                                                      The Honorable Dennis R. Dow