IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | |
| MAMTEK US, INC., ) | Case No. 11-22092-drd7 |
| ) | |
| Debtor. ) | |
| ) | |
| BRUCE E. STRAUSS, TRUSTEE, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Adversary No. 12-2009 |
| ) | |
| BRUCE COLE and NANETTE COLE, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Before this Court is the Motion to Confirm Homestead Exemption and Transfer Exemption Funds from Funds from the Sale of the Homestead to Defendants (the "Motion") filed by Bruce Cole and Nanette Cole (collectively, the "Coles"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1334(b) and 157(a) and (b). This is a core proceeding which this Court may hear and determine pursuant to 28 U.S.C. §157(b)(2)(A), (H) and (O). For the reasons set forth below, the Motion is denied, and the Court imposes an equitable lien on the Coles' homestead with priority in the amount of the fraudulently obtained funds that was invested in the homestead.

I.      FACTUAL AND PROCEDURAL BACKGROUND

On December 15, 2011, an involuntary Chapter 7 petition was filed against the Debtor, Mamtek US, Inc. (the "Debtor"), an entity formed to construct and operate a sucralose facility in Moberly, Missouri. The City of Moberly offered to finance the construction of a plant through the

1

issuance of approximately $39 million in bonds. Bruce Cole was the president and CEO of the Debtor. The petition was filed because Mr. Cole participated in fraudulent draw requests from the bond financing. Transfers totaled $904,167, at least $240,000 of which was used to cure the default on the mortgage on the Coles' Beverly Hills home (which was scheduled for foreclosure).

In May, 2012, the Chapter 7 Trustee (the "Trustee") filed an adversary proceeding against the Coles seeking to avoid several transfers. He also filed a motion for a temporary restraining order enjoining the Coles from disposing of the proceeds from the sale of their real property.

A hearing on the motion was held on May 8, 2012. The Court denied the Trustee's motion for temporary restraining order based primarily on Mr. Cole's testimony that the sale of the property would not close for some time, and that he would do nothing to accelerate it. The following day, the Defendants signed their Declaration of Homestead on their California residence; it was recorded on May 10, 2012. Soon thereafter, the Trustee renewed his motion for temporary restraining order after learning that the sale of the property had been accelerated.

On June 18, 2012, the Court entered a Stipulated Order directing that the proceeds be held by Escrow of the West in California pending further order of the Court. The Coles (through their then attorney) signed the Stipulated Order knowing that they had recently modified their sales contract to provide for the release of $174,000 to them prior to the closing of the sale, and that the escrow company had, in fact, already wired that amount to them. The sale of the property closed on or about June 19, 2012.

The Trustee later filed a motion for partial summary judgment to recover certain fraudulent transfers and preferential transfers. In August of 2013, the Court entered its partial Summary Judgment Order in favor of the Trustee in the amount of $904,167 on the grounds that Mr. Cole's withdrawals of funds from the Debtor were both actually and constructively fraudulent transfers

under §548. The Coles appealed. The District Court affirmed.

In February, 2014, the Coles filed a complaint in California state court seeking, among other things, a declaratory judgment that $175,000 of the escrowed funds should be distributed to them for their homestead exemption. The Trustee immediately filed a motion seeking an order directing Escrow of the West to transfer to him the amount of $906,895. The Court ordered that the escrowed funds be wired to the Trustee's bank account to be credited against the judgment, but that the funds not be disbursed until all claims in the adversary proceeding were final.

In early 2015, Escrow of the West filed a motion to confirm its compliance with the Court's orders and to impose sanctions on the Coles and their attorney. The impetus for their motion was the Coles' demand to direct a portion of the escrowed funds to federal and state taxing authorities to cover taxes associated with the sale of the property. After briefing by the parties and a hearing, the Court ordered that 1) the Coles' California complaint was in contempt of the Court's prior order instructing the Coles' to bring such requests to bankruptcy court, 2) the Coles must dismiss the California action in order to facilitate the disposition of the funds in the proper forum, and 3) they would be fined every day that the complaint was not dismissed. In March of 2015, the California action was dismissed with prejudice.[1]

In this Motion, the Coles are requesting that the Trustee transfer $175,000 of the funds to Mrs. Cole as their homestead exemption. Applying California law, they assert that they are entitled to the statutory amount of $175,000 since there is no judgment lien on the escrowed funds. The

---

[1] UMB argues that because the Coles dismissed the California complaint with prejudice, they are barred from seeking the same relief here. The Court's denial of this Motion on the ground that the amounts to which the Coles might have been entitled has already been paid to them renders the res judicata argument moot. Even if that were not so, the argument would be rejected. This Court ordered the dismissal of the California action in order to enforce its prior order that any determination as to the appropriate disposition of the sale proceeds should be made by this Court. It would be anomalous, to say the least, were the Court to hold that the dismissal prevented the Coles from doing precisely what the Court had directed them to do.

3

Trustee disputes the amount, arguing that the maximum amount to which they would be entitled, if any, is $100,000 per the California homestead statute.

The Trustee objects to the Motion on the grounds that the Coles were already paid $174,000 of the sale proceeds. In addition, he claims that permitting them to claim a homestead exemption would allow them to profit from funds fraudulently obtained from the Debtor and used to pay their mortgage.

UMB Bank, n.a. ("UMB Bank") also filed an opposition to the Motion. It echoes the Trustee's argument that the Coles cannot obtain the benefit of an exemption on a homestead acquired or improved with fraudulently obtained funds. Furthermore, UMB Bank contends that this fraud exception applies to Mrs. Cole even if the fraudulent conduct was only undertaken by Mr. Cole.

A trial on the Motion was held and the parties were given the opportunity to file post-trial briefs.

## II.    DISCUSSION

A. Applicable Law

The Trustee does not dispute that California state law applies. The relevant statutes are §§704.710 – 704.850 of the California Code of Civil Procedure for the automatic exemption, and §§704.910 – 704.995 for the declared homestead. Pursuant to §704.730(a)(2), the amount of the homestead exemption is $100,000 if the judgment debtor or spouse who resides in the homestead is, at the time of the attempted sale of the homestead, a member of a family unit, and there is at least one member who owns no interest in the homestead or whose only interest is a community property interest with the judgment debtor. Alternatively, under §704.730(a)(3), the amount of the exemption is $175,000 if the judgment debtor or spouse of the judgment debtor who resides in

4

the homestead is, at the time of the attempted sale, 65 years of age or older. (There are other enumerated qualifications, but no evidence has been presented to demonstrate that they are applicable here.)   Since no judgment lien exists at this time, the amount of the exemption is the higher amount given the respective ages of Mr. Cole and Mrs. Cole.[2]

B.    <u>The Coles have already been paid.</u>

The crux of the Motion is the Coles' claim that Mrs. Cole is entitled to a disbursement of $175,000 from the sale proceeds as a homestead exemption pursuant to §704.720. The Trustee's position is that the Coles already received a payment of $174,000 from the sale proceeds, and that under the statutory scheme contained in §704.850, they are not entitled to any more.

Mr. Cole testified that on or about May 18, 2012, the escrow company wired $174,000 to him, an amount just shy of the maximum amount to which the Coles would be entitled under the California homestead statute.  His contention, however, is that the payment satisfied the liquidated damages provision set forth in Section 25 of the Residential Purchase Agreement and Joint Escrow Instructions.  That section provides:

> If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid.   If the Property is a dwelling …which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price.

(Here, $174,000 equals 3% of the purchase price of $5.8 million.)   Thus, he argues, the $174,000 payment has nothing to do with the homestead exemption.

---

[2] Regarding the amount of the homestead exemption, California law is clear that the amount of the exemption is determined as of the date the judgment lien attaches. *Berhanu v. Metzger*, 15 Cal. Rptr. 2d 191 (1992).  Since no judgment lien has attached yet, it would be the higher amount to which the Coles are entitled based upon their current ages. Although the Court rejects the Coles' contention that the Court has already ruled that there is no judgment lien (it merely observed that the previous Order the Court entered did not itself impose one), it agrees that no judgment lien exists at this point in time.  The Court also notes that the Trustee has not asserted a claim for the alleged excess exemption amount.  In reality, the amount of the exemption is not relevant to the Court's analysis or its conclusion.

The Coles' argument that the $174,000 payment constitutes liquidated damages makes no sense. The purpose of a liquidated damages provision in a real estate contract is to compensate the seller in the event the buyer fails to complete the purchase of the property. *See* Cal.Civ.Code § 1675. In this case, the buyer performed and the sale closed. Therefore, the liquidated damages provision would not have been triggered.

The Coles assert further that because the $174,000 payment was reflected in the Closing Statement as a debit, it cannot be characterized as a part of net proceeds. The fact that the payment appears as a debit does nothing to bolster the Coles' argument. It is simply an acknowledgment that the payment was made, and that amount should be deducted from the funds to be paid to the sellers at closing. The $174,000 payment was part of the proceeds of the sale of the Property that was received by the Coles.

Under California law, the proceeds of a sale of a homestead must be distributed in the following order: 1) consensual liens; 2) the homestead exemption; and 3) judgment liens. §704.850. The closing statement entitled Seller's Estimated Net Proceeds (the "Closing Statement") indicates a payout plan consistent with this statutory requirement. If the Motion were to be granted, the Coles would essentially be paid twice, an outcome that would not only be inequitable, but improper under the relevant statute.

C. <u>The Trustee is entitled to an equitable lien on the homestead in the amount of the fraudulently obtained funds invested in the homestead.</u>

Throughout their pleadings, the Coles emphasize the strong public policy underlying homestead laws: to provide a place for the family to reside and enjoy the comforts of a home without the anxiety that it may be taken from them by their creditors. *In re Estate of Faith*, 132 Cal. 609, 613 (1901). While the California Legislature has enacted statutes to further this policy, exceptions to the homestead protection are well-established. One such exception is the situation

in which tainted money is invested in the homestead. As the court explained in *Schoenfeld v. Norberg*, 267 Cal. App. 2d 496 (1968):

> To this catalogue of circumstances under which a homestead is subject to execution sale, the courts have added those cases where money has been obtained from the executing creditor by fraud and used to acquire the homestead property. …. In each of these cases, all or substantially all of the fraudulently obtained funds were funneled into the homestead property, for the obvious purpose of retaining ill-gotten gains by rendering them execution-proof. On their facts the cited cases are obviously correct because they satisfy the elementary rule that one cannot be permitted to profit by his own wrong.

*Id.* at 498. *See also Shinn v. Macpherson*, 58 Cal. 596, 599 (1881)(the homestead law "was enacted for beneficent purposes, designed to secure a home for the family, but…was never intended 'to be a secure and impregnable asylum in which to deposit peculations from others.' "); *Kemp v. Enemark*, 194 Cal. 748, 754 (Cal. 1924)("the homestead property which represents the fruit of fraud is not exempt from execution and sale"); *Jefferson v. Tom*, 126 P. 2d 387, 437-38 (1942)("Although the constitutional and legislative provisions for such exemption have been steadfastly upheld,…nevertheless the right in the wife to invoke the protection of the statutes concerning …the homestead are not so absolute and unqualified as to be beyond recognized and well-established equitable doctrine."); *Stoner v. Walsh*, 24 Cal. App. 3d 938 (1972)(defrauded creditor entitled to execute against homestead into which fraudulently borrowed money was put).

California courts addressing the homestead exemption issue in the context of tainted funds have often imposed an equitable lien on the property which primes the homestead claim. *See, e.g., Duhart v. O'Rourke*, 99 Cal. App. 2d 277, 280 (1950)(where fraudulently obtained funds are invested in a homestead, "the right of the creditor so defrauded becomes paramount to that of the owner of the homestead…and the property so homesteaded is not exempt from execution or sale"). In *Ohio Electric Car Co. v. Duffet*, 48 Cal. App. 674 (1920), judgment was entered against the defendant in a contract dispute. The sheriff was unable to find any property not exempt from

7

execution; the defendant had "gifted" property to his wife, out of reach of his creditors. His wife subsequently sold that property and invested the proceeds to pay off debt and make improvements upon her homestead. The judgment creditor sought to have its judgment declared a lien on the homestead because of the fact that the property had been improved with funds that originated from the husband's fraudulent transfer. The lower court granted the relief requested and the appellate court affirmed, concluding that "a court of equity would have had power not only to declare the money judgment against the defendant, but to go further and declare such judgment a lien upon her property under the circumstances in evidence here." *Id.* at 679. The court ruled further that the tainted funds could not be protected by investing them in her homestead: "In so far as her home represented the funds received from her husband, under the circumstances in this case, it was not a proper subject for inclusion in her declaration of homestead, and cannot be impressed with this character." *Id.* *See also Shinn*, 58 Cal. at 599 (holding that the defendants' homestead right was held subject to a lien for the payment of the amount misappropriated); *Holder v. Williams*, 167 Cal. App. 313, 317 (1959)(imposing an equitable lien that preceded the defendants' homestead exemption).[3]

The Coles cite §704.950(c) for the notion that any equitable lien imposed would have to attach to a declared homestead in the amount of any surplus over the homestead exemption. This argument is based on an erroneous reading of the statute and case law. Section 704.950(c) specifically refers to judgment liens and makes no mention of equitable liens. Provisions such as this were designed to protect the homestead from forced sale for ordinary indebtedness, not as an

---

[3] This body of law makes partially moot the Trustee's argument about an attachment lien and supposed relation back of a judgment lien to the date the lawsuit was filed. It would only apply if the Trustee had been granted a writ of prejudgment attachment under California law, but he has not. This Court's order did not equate to prejudgment attachment, and the Trustee himself admits in his opposition to this Motion that the Court's order is only "analogous" to a writ of prejudgment attachment.

immunity from torts and their legal consequences. *Kemp*, 194 Cal. at 753-54. Whereas normally a homestead would take precedence over a later judgment lien, an equitable lien is based on the recognized doctrine which denies relief to someone seeking the aid of a court of equity where he is found to enter the forum with "unclean hands." *McDougall v. O'Hara*, 129 Cal. App. 2d 12, 14 (1954).

In opposing the Motion, both the Trustee and UMB request that the Court deny the Coles' claim to the homestead exemption, effectively disallowing the exemption. The Coles counter that even when a fraudulent transfer to a homestead is set aside, the amount available to creditors is calculated after the exemption is taken into account. They cite *Fidelity National Title Insurance Co. v. Schroeder*, 179 Cal. App. 4th 834 (2009) to support their position, but that case is distinguishable by the facts and not relevant. The Court nonetheless agrees that surcharge is permitted under California law, but there is no authority for defeating the exemption because of fraud. *See Shinn*, 58 Cal. 596 (homeowners held homestead right subject to lien in the amount of the ill-gotten gains used to pay off the mortgage); *Schoenfeld v. Norberg*, 267 Cal. App. 2d 496.[4]

Here, the evidence is clear that the Debtor made wire transfers of hundreds of thousands of dollars to the Coles based on Mr. Cole's fraudulent draw requests. It is also undisputed that some of these funds were used to pay their mortgage. As the Trustee, UMB and numerous California courts have stated, it would be inequitable to allow the Coles to now capitalize on their inequitable conduct and obtain the benefit of the homestead exemption at the expense of the defrauded

---

[4] The reason the homestead exemption was preserved in *Schoenfeld* was that only a nominal amount of money went into the homestead and it was repaid before the creditor's judgment was entered. No tainted money appeared in the homestead, in sharp contrast to the situation here. Nevertheless, the *Schoenfeld* court makes the point that homesteads can be subject to the imposition of an equitable lien where substantially all of the money obtained by fraud is funneled into the homestead for the obvious purpose of rendering it execution-proof. Thus, the *Schoenfeld* case reaffirms the principles applied here.

creditors. Accordingly, the Trustee is entitled to an equitable lien in the amount of the funds fraudulently obtained from the Debtor and used to pay the Coles' mortgage debt.[5]

D. <u>The fact that the funds were not used to acquire the property does not preclude the imposition of an equitable lien.</u>

The Coles assert that their homestead cannot be surcharged because their "ill gotten gains" were not used to *acquire* the property. They claim that they purchased their home 14 years prior to the filing of this adversary proceeding, and that the disputed funds were applied to mortgage payments, not to acquisition of the property. The Coles cite cases in which equitable liens were imposed when fraudulent funds were used to acquire property, and make the illogical leap to the conclusion that imposing such a lien is limited to such situations. There is no such requirement in relevant caselaw. To the contrary, a number of courts have surcharged a homestead when fraudulently obtained funds were simply "invested in" the property. *See, e.g., Stoner,* 24 Cal. App. 3d 938 (defrauded creditor entitled to execute against the homestead into which the fraudulently borrowed money was put); *Ohio Elec. Car Co.,* 48 Cal. App. 674 (funds invested in improvements); *Duhart v. O'Rourke*, 99 Cal. App. 2d at 280("A homestead may, however, be successfully attacked by a creditor where money fraudulently obtained from him is invested in and constitutes part of the homestead."); *Shinn*, 58 Cal. 596 (funds used to pay off mortgage); *In re Stratton*, 106 B.R. 188, 192–93 (Bankr. E.D. Cal. 1989)("…there is no question that the fraudulent use of another's money to improve a homestead is a valid ground for attacking a bankrupt's homestead exemption")(citing *Stoner,* 24 Cal.App.3d 938). Based on the plethora of cases establishing that the imposition of an equitable lien may be appropriate when fraudulently-

---

[5] Exactly how much of the fraudulently transferred funds were used to pay the Coles' mortgage is not certain because the bank and mortgage records are not entirely clear. The evidence seems to indicate that the amount was either $248,018.73 or $241,772.07.

10

acquired funds are invested in the homestead, the Court rejects the Coles' argument that the funds had to be used to acquire the homestead.

E.   The innocent spouse exception does not apply.

The Coles contend that even if this Court determined that the homestead exemption was not available to Mr. Cole under the fraud exception, Mrs. Cole would still be entitled to the exemption as the "innocent spouse." The only authority they cite for their position is §704.730(b) which provides, in part, that "…if both spouses are entitled to a homestead exemption, the exemption of proceeds of the homestead shall be apportioned between the spouses on the basis of their proportionate interests in the homestead." That provision does not apply under these facts.

California has long held that innocent spouses cannot profit from community property acquired by fraud. *Q-Soft, Inc. v. Superior Court*, 68 Cal. Rptr. 3d 687, 693 (2007). UMB Bank cites two cases that prove the point. In *Shinn v. MacPherson*, the husband fraudulently withdrew funds from his partnership and used them to pay his mortgage. His wife was not involved in the fraud. The husband's partner brought an action against both husband and wife, seeking a lien superior to the homestead exemption. In granting the relief requested, the court addressed the "innocent spouse" question this way:

> It is not important that it does not appear that Mrs. MacPherson participated in the wrongful acts of her husband. If the transaction is permitted to stand, she, as well as he, will reap the fruit of the fraud, whereas the interposition of equity does but restore a lien on the premises for the amount paid by the husband….

*Id.* at 599.

Similarly, in *Kemp v. Enemark*, the husband committed fraud in connection with a promissory note he presented to the bank. His wife had no knowledge of the fraud at the time. Soon after the bank commenced an action against the husband, the wife filed a declaration of homestead for the joint benefit of herself and her husband. Judgment was entered against the

11

husband, and the sheriff levied upon the real property that was subject to the homestead exemption (the property in which the fraudulently-procured funds were invested). The wife then filed suit to enjoin the execution sale, relying in part on the fact that she was not a party to the fraud. The court declined to protect her community interest in the property: "[T]he plaintiff herein is seeking the aid of a court of equity to preserve to her the fruits of the fraud of her husband. Plaintiff does not offer to do equity. She cannot therefore successfully seek the aid of equity." *Id.* at 753. *See also Demetris v. Demetris*, 125 Cal. App. 2d 440, 444 (1954) ("…California adheres to the principle that a wife, although herself innocent, will not be protected in retaining the fruits of her husband's fraud.")**.**

Here, although Mrs. Cole did not participate with Mr. Cole in the fraudulent draws of the funds, the evidence shows that the funds were deposited into her bank account. Moreover, Mrs. Cole clearly benefited from the use of those funds; they prevented the foreclosure on her homestead and created equity in the property. Therefore, she cannot be permitted to benefit by claiming a homestead to the detriment of those defrauded.

## III. CONCLUSION

Several facts in this case are undisputed, facts that are key to the resolution of the issue presented in the Motion. The Coles invested fraudulently obtained funds into their homestead. The Coles received $174,000 as part of the closing of the sale of their homestead. That amount is approximately the same amount to which they would be entitled under the California homestead statute (if the maximum were applicable). Since the Coles have already been paid out of the sales proceeds, the Trustee is now entitled to be paid according to California's statutory distribution scheme and equitable principles that would prohibit the Coles from getting paid twice.

Alternatively, California case law provides a strong basis for the imposition of an equitable lien in favor of the Trustee on the Coles' homestead due to their "unclean hands" in connection with making their mortgage payments. The amount of that lien would equal the amount of the fraudulently obtained funds that were invested in the homestead. The Coles' homestead exemption would be subject to that equitable lien.

Accordingly, the Coles' motion is DENIED. In addition, an equitable lien will be imposed in favor of the Trustee in the amount of the fraudulently-obtained funds that were invested in the Coles' homestead.

Date: June 22, 2018                                     /s/Dennis R. Dow
                                              THE HONORABLE DENNIS R. DOW
                                              UNITED STATES BANKRUPTCY JUDGE